HEARD NOVEMBER TERM, 1878.

LAMAR *vs.* RAILROAD COMPANY.

The Court of Equity had jurisdiction of a bill by the owner of a dominant tenement to restrain the owner of the servient tenement, through whose lands a water course flowed, to compel defendant to remove obstructions which he had erected to the flow of the water, and to compensate the plaintiff for all damages which he had sustained on account of such obstruction, as well those which accrued before the filing of the bill as those which accrued afterwards; but he is not entitled to interest on the damages annually sustained by him.

BEFORE ALDRICH, J., AT RICHLAND, AUGUST, 1878.

This was a bill in Equity, filed in 1866 by Robert G. Lamar, trustee of Mrs. Eliza Stark, wife of Theodore Stark, and others, against the Charlotte and South Carolina Railroad Company.

The case will be fully understood from the following reports of Referees, to whom the case was referred:

*Report of Henry D. Lesesne, Special Referee:*

This cause has been referred to me by order of the said Court in the following terms:

"It is ordered that the Hon. Henry D. Lesesne be appointed Special Referee in this case, and that his report be taken and deemed to be the decree of the Circuit Court, subject to be appealed from as in other cases; this order being made in accordance with the Act of Assembly in such case made and provided."

The bill of complaint alleges that the plaintiffs have been for a long time seized of a tract of land near the city of Columbia, known as Stark's farm, in which there is a valuable piece of low ground or meadow land which was well and sufficiently drained by a natural water course or "brooklet" into Fisher's mill pond; that about the year 1848 the defendants constructed their road-bed and embankment on the said tract of land, and at the point where it crosses the water course built a culvert, as well for the security of the embankment as for the purpose of venting the water coming from above, so that the drainage of the said meadow land should not be obstructed; but that the floor of the culvert is higher than the level of the field, so that the water has been kept back, and the field ponded ever since the building of the road, and rendered valueless for agricultural purposes, whereas before the obstruction existed it yielded average crops of forty to fifty bushels of corn to the acre. The bill prays that the defendants be enjoined from continuing the obstruction complained of and compelled to remove the floor of the culvert and dig the passage under the embankment of sufficient depth to allow the water to flow freely so as to restore the proper drainage of the land; also that it be referred to the proper officer of the Court to inquire and report what damage has been suffered by the plaintiffs through the said obstruction and what compensation should be awarded to them therefor.

The answer sets forth that the defendants constructed their railroad from Charlotte, in North Carolina, to a point on the South Carolina Railroad a little below Columbia, by virtue of a charter granted by the State of South Carolina, contained in two Acts of the General Assembly, passed respectively on the 18th day of December, 1846, and the 19th day of December, 1848; that said charter gave them power to construct all works that might be deemed necessary for the proper completion of the road, also to

use all land through which they might desire to conduct the same, with some restrictions, a limit as to the width of the land so used, and a proviso that dwelling houses, yards, gardens and graveyards should not be invaded, and, further, that if any land or right of way so required could not be obtained by agreement with the owners, the same might be taken at a valuation, to be made by five Commissioners, or a majority of them, to be appointed by a Court of the State having common law jurisdiction, the proceedings of the Commissioners, with a full description of the right of way, to be returned under the hands and seals of a majority of them to the Court, and be a record of the same,—the land or right of way so valued to vest in the company in fee simple on payment or tender of payment of the valuation.  That the defendants found it necessary to lay out their road over the land of the plaintiffs, and at October Term, 1848, of the Court of Common Pleas for Richland District, Commissioners were duly appointed according to law, who at the same term of the Court made the valuation and assessed the damages sustained by the plaintiffs, allowing one hundred dollars per acre for eight acres of uplands and two hundred dollars per acre for two acres of meadow land, which sums were duly paid by the defendants, who thereupon commenced the construction of the road, and contracted with the Hon. Theodore Stark, one of the plaintiffs, to make the embankment over the said land, which was accordingly done by him.  That the vent of the culvert, which was planned and constructed by some of the best engineers in the County, is greater than is necessary to discharge all of the water from the head of the valley in the heaviest rains; and no remonstrance was ever heard by defendants as to their work, although plaintiffs lived on the spot and were daily witnesses of the construction.  That about eight years afterward a suit was commenced by them, but speedily abandoned, for damages caused by the obstruction now complained of, and from that time until just before the filing of the bill no pretense has ever been set up, or is by the bill, that the culvert is not of sufficient dimensions to discharge at all times all the waters of the valley; that the damage complained of is owing to plaintiffs' neglect to keep open the drains on the land intended to lead the water into the vent; that the writ issued to the Commissioners as aforesaid directed them in making the valuation to take into consideration the loss or damage which might occur to the owners in consequence of the land being taken, or the right of

way surrendered, and, the sum awarded being more than twice the value of the land at the date of the return, they must have taken into consideration any damage that might arise from the embankment causing the drainage of the valley to be more difficult, so that plaintiffs were paid in advance for the very damage now complained of, if any such exist. And, lastly, the answer excepts to the jurisdiction of the Court as a Court of equity, and submits that it is the proper function of a Court of law to abate nuisances and assess damages, and prays to have the benefit of this exception as fully as if the same were presented by plea or by demurrer.

The above, I think, will be found to be a fair and sufficient abstract of the pleadings, which are very complete and particular, and consequently quite voluminous.

It appears that, by a consent order made by ex-Chancellor Carroll in 1867, the late W. H. Talley had been appointed Special Referee to take testimony in the cause, Mr. D. B. DeSaussure, then Commissioner in Equity, being the husband of one of the parties interested in the cause; but this order was not brought to my notice at the hearing hereinafter mentioned; I learned it some time after from the Referee, who offered to send me the testimony taken by him. I declined to receive it, because it had not been introduced at the hearing.

The cause was heard before me, then one of the Chancellors of the State, at June Term, 1868, not long before my exclusion from office under the operation of the present State Constitution. I was unable to prepare by that time, in consequence of an immense pressure of business up to the last hour of my official existence, and repeated spells of ill health have also hindered me in the preparation of this report.

No testimony being before me, I must consider the questions involved and discussed with reference only to the case presented by the bill and answer.

The answer affirms that until just before the filing of the bill no pretense was ever set forth, " or is by the bill," that the culvert is not of sufficient dimensions to discharge at all times all the waters of the valley; but the bill in fact charges that the floor of the culvert is higher than the level of the field, so that the water has been kept back and the field ponded ever since the building of the road.

The answer excepts to the jurisdiction of the Court and prays to have the benefit of the exception as if it were presented by plea or

demurrer; but demurrer admits the allegations of the bill, and it is better for defendants to give them the benefit of their answer, as it denies plaintiffs' main allegation, to wit, the insufficiency of the culvert.

I will now consider the questions involved in the case thus presented, which are: whether a Court of Equity has jurisdiction in such a case; and, if so, what sort of relief, if any, the plaintiffs are entitled to.

1. Unquestionably if the grievance complained of were a mere trespass the law Court only could take cognizance of the case. But where the case is remediless by the mode of relief to which that Court is restricted, or attended with permanent results, destroying or materially altering the estate, the Court of Equity, with its peculiar power to give the exact relief called for, is the proper forum. Abundant authority might be adduced for this proposition, but as our own well-considered case of *Bird* vs. *The Wilmington and Manchester Railroad Company* (8 Rich. Eq., 46,) is precisely in point, I will do no more than refer to it.

2. If the improper construction of this culvert, with its floor higher than the level of the land above it, be in fact the cause of the insufficient drainage of the plaintiffs' land, (which drainage the defendants have no right to obstruct by their embankment,) the mischief is indeed without adequate remedy in the law Courts, and attended with permanent results, destroying or materially altering the plaintiffs' estate. The proper remedy for preventing future mischief would be abatement of its cause by a mandatory injunction, which the Court of Equity has the power to grant and enforce.— 2 Story's Eq. Jur., §§ 926, 927; 2 Redfield on Railways, 358. And having thus obtained jurisdiction of the cause, that Court has also the power to give full relief and thereby prevent multiplicity of suits by ascertaining the damage, if any, to which the plaintiffs are entitled for loss already suffered, and enforcing their payment.

The answer makes this point, to wit: That inasmuch as the writ issued to the Commissioners to make a valuation of the lands of the plaintiffs directed them, in making such valuation, to take into consideration the loss or damage which might occur to the owners in consequence of the land being taken or the right of way surrendered, and the sum awarded (as the answer assumes) was more than twice the value of the land at the date of the return, they must have taken into consideration any damage that might arise from

the embankment causing the drainage of the valley to be more difficult, so that the plaintiffs were paid in advance the very damage now complained of, if any such exist. I do not think that the idea of such damage as that now complained of could have been in the minds of the Commissioners, because, obviously, with a sufficient culvert the drainage would be as free as before; and the answer insists that in fact "the vent of the culvert is far greater than is necessary to discharge all of the water from the head of the valley in the heaviest rains."—1 Red., p. 341, §§ 82 and 87.

Lastly, it was argued that the lapse of time before the commencement of this suit implies acquiescence in the alleged injury and bars the claim now made. It was well said in reply that such an injury is developed gradually; that the effect of the culvert could be learned only by experience; that its sufficiency might not have been subjected to an adequate test for a long time; and, moreover, that for more than four years before the commencement of the suit the country was in a state of war and the Courts closed. But it is held that mere delay will be no ground for refusing relief where the plaintiff's right is clear.—Hilliard on Injunctions, p. 26, § 44; 2 Redfield, p. 353, § 220.

My judgment is that a Special Referee ascertain by testimony to be taken by him, and report to this Court, whether the plaintiffs have suffered any and what amount of damages from the imperfect drainage of their land since the building of the railroad embankment across it; whether the same were owing to insufficiency of the culvert constructed by the defendants; whether it is practicable to construct a culvert which would afford free and adequate drainage of said lands, or so to reconstruct or alter the present one as to make it sufficient for the purpose, and the manner in which the construction of such new culvert or reconstruction or alteration of the present one should be made; the testimony taken by Mr. Talley to be adopted and used by the Referee in his investigation and report. And that upon the coming in of the report such order be thereupon made as the Court shall deem proper.

*Report of John T. Rhett, Special Referee:*

Pursuant to the order of R. B. Carpenter, Judge of the Fifth Circuit, of date 2d March, 1877, ordering, among other things, me, as Special Referee, to "report whether the plaintiffs have sustained

any and what amount of damages from the imperfect drainage of their land since the building of the railroad embankment over it; whether the same were owing to insufficiency of the culvert constructed by the defendant; whether it is practicable to construct a culvert which would afford free and adequate drainage of said lands, or so to construct and alter the present one as to make it sufficient for the purpose; and the manner in which the construction of such new culvert or reconstruction or alteration of the present one should be made," etc., I have taken the testimony herewith filed; have had read over the testimony heretofore taken in the cause; have, after careful examination of the plats submitted, in company with parties representing both plaintiffs and defendant, visited the lands in question and carefully inspected the same—the drains, culverts and railroad embankment—and have heard argument, on the part of the plaintiffs Messrs. Pope and Youmans, and on the part of the defendant Mr. Rion, and report as follows:

As to the first question submitted, to wit, whether any and what amount of damages have been sustained since the building of the railroad, I have, after most careful consideration and some doubt at first, come to the conviction that the case of the plaintiffs is made out as a matter of fact, and that they have been damaged by the imperfect drainage of their land, the result of the building of the embankment of the railroad, and that they are entitled to the amount hereinafter mentioned. To my mind, the testimony of the defendant, in large part that of experts who never saw the land until called upon to go there for the purpose of testifying, was totally insufficient to overthrow the positive and direct testimony on the part of the plaintiffs of parties who spoke from their own knowledge and experience of the very land in question. As to this point I am fully satisfied. But right here, in connection with the finding just made, as well as all the other findings to be made, I desire to state that I consider that as I, as Referee, have only to do with questions of fact and not at all with any questions of law that may have arisen, or appeared to have arisen, on the testimony and in the argument, I have not considered, therefore, the questions of the liability or non-liability of the railroad by reason of the water being surface water or not surface water, or whether the damages were included in the return of the Commissioners assessing the right of way, or any other point of law that did arise or may be raised on the testimony in the cause, but solely the naked, and, in

the order of reference, clearly-stated, questions of fact. As to this special finding, I will say that my own inspection not only did not increase my first doubt, but, in fact, tended to increase my conviction in the direction I have decided.

As to the second part of the first question submitted, to wit, what amount of damages are the plaintiffs entitled to, I must own that I have been exceedingly perplexed. It presented a question of far more difficulty to me than is contained in all the other questions submitted in the order. Although I have become convinced that the lands of the plaintiffs have been damaged by the imperfect drainage, and that that imperfect drainage is not the fault of the plaintiffs, as contended for on the part of the defendants, except in a very much less degree, as I will more particularly hereinafter refer to, but is the direct and unavoidable result of the construction of the railroad embankment, yet I find great difficulty in arriving at a proper measure for the damages to which, according to the view of the facts taken by me, the plaintiffs are justly entitled. I have not seen how I could take the measure claimed for the plaintiffs, even supposing the facts on which it is predicated were found to my entire satisfaction, which was by no means the case. Indeed, one view, as warmly urged by the plaintiffs, would give damages many times exceeding the fullest value of all the land claimed to have been affected. I have not been able to come to any such conclusion. To satisfy me on such a point, it would have been necessary to prove actual losses—that is, each separate crop planted, its cost and its loss, altogether or in part. I will, then, first indicate the method by which I have measured the damages, and then give the amount. I do not find it possible for me even then to account for each separate dollar of that amount. I must even then find the damages somewhat in round numbers. I consider the value of the land claimed to be affected as fairly proved at three thousand dollars. I think that, in estimating damages, the plaintiffs are entitled to its full value at the time the right of way was purchased. I do not think I should go farther back than four years before the commencement of the suit, and that I should come up to the present time—that is, about sixteen years, from four years previous to filing of the bill (7th May, 1866,) to last of January, 1878. Did I believe that during all that time the land was made perfectly worthless, and that there was no fault whatever on that point to be attributed to them, the plaintiffs, I

would feel compelled to find their damages to be the amount of the interest, at seven per cent., on the three thousand dollars, increased, *possibly*, by the unavoidable charges sustained by them, in spite of its total non-use or non-service. But from the testimony I am convinced that the land has been of some use to them,—parts of it, at least, for planting, pasturing and hay-making,—however. Although I have not been convinced, as claimed by the defendants, that the defective drainage is altogether the fault of the cultivators of the land, their imperfect system of drainage and neglect of keeping the ditches in perfect condition,—on the contrary, believe that no change of system nor attention would perfectly drain the land or the larger part of it so long as the railroad embankment and culvert stand as they do now and have stood,—yet I do feel sure that had the main drain in the upper part of the tract been carried down near the Western side, along the natural bottom of the valley, instead of across to the Eastern side, and the sharp angles in said main ditch truncated and proper side ditches dug, some portion of the tract, though not a very large part, could have been kept in good condition. The natural fall is sufficient to drain a portion of the upper part of the tract had it been treated as I have indicated and as suggested in the testimony of the engineers, in spite of the great obstruction below. It is just here that I find my greatest difficulty in estimating the damages. I find it difficult, almost impossible, to exactly estimate the value the land has been actually to the plaintiffs in its present condition; and I find the same when I come to consider what quantity of the land might have been saved by proper construction of drains and proper keeping them open. I do not, however, consider that in either case the estimate should be large nor the deduction very large that I feel should be made on the amount of damages awarded by me. I feel it necessary, therefore, after giving the method I have followed to find the damages, and the reasons why the full amount that would be given in a certain condition of the case should be subject to some deductions,—I feel it necessary, for the reasons given, to deal in round numbers. The amount which, to my mind, fully represents the damages of the plaintiffs is twenty-two hundred and fifty dollars, ($2,250,) and I so find.

The next question—"whether the same were owing to insufficiency of the culvert constructed by the defendant"—must necessarily have been much considered in deciding the questions of fact

just hereinbefore made. As to the upper culvert in the railroad bank, it appears to me perfectly clear that it never has had, nor could have, in its present construction, any bad effect on the drainage of the place. The claim that it should be constructed diagonally, and so as thereby to bring the water fast on the land, appears to me unreasonable, and such a construction absolutely unnecessary. It is large enough for all purposes, high enough and low enough, and properly constructed in every way. I find, therefore, that the upper culvert in no way impairs or interferes with the drainage of the place. As to the lower culvert, after a careful consideration of all the testimony, I find that it is really the cause of all the trouble. It is large enough—that is, high enough and broad enough, but its bottom or flooring is too high. This is the main cause—almost the whole cause—of the imperfect drainage of the place; and, in my opinion, the land, or at least by far the larger part of it, will always be of comparatively little value, a good deal absolutely worthless, so long as the lower culvert remains in its present condition. I am convinced that the floor of that culvert is above the natural bed of the stream, and that it should have been made lower than that natural bed, inasmuch as after the construction of the embankment that culvert had to do the work of three ditches, two of which the railroad embankment stopped up. The fall below the culvert is considerable, amounting to four feet below the mouth [lower] in a short distance. Had the flooring of the culvert been made from four to five feet lower than it is now, I feel convinced, from the testimony, that the drainage would have been as perfect as before the railroad was constructed. I find, therefore, as matter of fact, that the damages sustained by the plaintiffs were owing to the insufficiency of the culvert constructed by the defendants at that point where the stream leaves the plaintiffs' land.

The next question submitted is: " Whether it is practicable to construct a culvert which would afford free and adequate drainage of said land." As to this, it appears to me a matter of no doubt whatsoever that a culvert can be so constructed, and I do so find as matter of fact; but from the view indicated by me before, and now specifically decided in the next question submitted, I see no necessity for constructing a new culvert. It would be a useless expense, and not necessary to the perfect enjoyment of plaintiffs' rights.

As to the remaining questions—whether it is practicable to "so reconstruct and alter the present one [culvert] as to make it suffi-

cient for the purpose, and the manner in which the construction of such new culvert or reconstruction or alteration of the present one should be made,"—I have necessarily, in deciding the other matters of fact, been obliged to indicate my decision as to them. As I have just said, I think a new culvert, similar in size to the present culvert, could be constructed, with its floor much lower, at a point in the embankment somewhat higher up the railroad, say about half way between the present culvert and the opposite side of the valley, which would perfectly drain the place. But, as I have said, I see no necessity for it, for the present culvert, at the outflow of the water, can be so altered as to make it in every way sufficient for the purposes of draining. It was contended by the plaintiffs that this could not be effected without changing the direction of the culvert, so as to make it cross diagonally the railroad. I can see no reason why such a change should be made, or even why it should have so been constructed in the first instance. The culvert is large enough to carry off many times the water that ever flows through it, and the stream is of no such dimensions nor rapidity as to require a straight course. Were the culvert, as to its depth, properly constructed, I feel sure, from the testimony, that it would easily flow without any rise on account of the fact that it bends in flowing into it. I find, therefore, as a matter of fact, that the present culvert can be made sufficient for all purposes; and the manner in which that alteration, deemed necessary, should be, is that the flooring of said culvert should be lowered at least four feet, and, if it be possible, (and I see no reason, from the testimony, why it should not be possible,) five feet, along its whole length and breadth.

To recapitulate: I find, as matters of fact, that the plaintiffs have sustained damages to the amount of ($2,250) two thousand two hundred and fifty dollars, from the imperfect drainage of their land, since the building of the railroad embankment across it. I find that the same was owing to insufficiency of the lower culvert constructed by the defendants; that it is practicable to construct a culvert which would afford free and adequate drainage of said lands, or so to reconstruct and alter the present one the [lower] as to make it sufficient for the purpose. And I find that the manner in which to construct a new culvert is to build it like the present one, with its floor much lower, say from four to five feet, or to reconstruct and alter the present one by lowering the floor along

its whole length and breadth at least four feet, and, if it be possible, five feet.

*Defendant's Exceptions to Referee's Report :*

1. For that the said Referee found that the plaintiffs had been damaged by the improper structure of the lower culvert by the defendants.

2. For that the said Referee did not find that the defective drainage of plaintiffs' lands was owing to their own bad management and neglect.

3. For that the said Referee did not find that the plaintiffs were not entitled to receive damages from the defendants on account of the defective drainage of plaintiffs' lands being caused in part by the bad management and neglect of the plaintiffs.

4. For that the said Referee found that the whole thirty acres of plaintiffs' land was damaged by the improper structure of the lower culvert, when it was found that the elevation of the upper and more remote part of said thirty acres, above the floor of said culvert, was too great for its defective drainage to be attributed to the height of said floor.

5. For that the said Referee found damages excessive in amount.

6. For that the said Referee found damages from four years before the commencement of plaintiffs' suit up to the last day of January, 1878, *i. e.*, for sixteen years.

7. For that the said Referee assessed any damages sustained by the plaintiffs by reason of the defective drainage of the land after 7th May, 1866, the date of the filing of plaintiffs' bill.

*Opinion of His Honor the Circuit Judge :*

ALDRICH, J.   I was seduced into the hearing of this cause by my plausible friends, Mr. Fickling and Mr. Pope, who represented to me that it was a short matter, coming up on exceptions to a Referee's report.   Having consented that Mr. Rion should be summoned from Winnsboro, I would not retract, although I had been steadily worked for six weeks, with the thermometer in the nineties. It is no better now, but unless I file my judgment there will be no time to consider the case until after my Fall Circuit.   Let me hope that my old friends will be satisfied with this proof of my amiability and not put me to such a test again, at least in the Summer time.

The bill was filed 7th May, 1866; several references have been had and reports made. It now comes up on exceptions to the report of Mr. John T. Rhett, to whom it was last referred by order of Judge Carpenter, dated 2d May, 1877. I have waded through the mass of testimony, and if Mr. Rhett, an educated gentleman and experienced lawyer, who had the advantage of examining the witnesses, and also of a personal inspection of the *locus in quo,* found it difficult to come to a conclusion on the facts, how can it be expected that I will be able to render a more satisfactory judgment on the mere reading of the evidence? Both parties to the action except to his findings of fact, which goes to prove the wisdom of the rule, of universal application, that where Judge, jury or Referee find the facts the appellate tribunal will not interfere unless the finding is not in conformity with the proof. Besides, after a careful examination of the testimony, I do not see what better rule could have been adopted to ascertain the damages than the one recited by Mr. Rhett. It is manifest that he could not have estimated the damages sustained each year by the loss or deterioration of crops, for that would have led him into the field of speculation without sufficient data on which to form a correct opinion; he would have had to take into consideration not only the seasons, the mode of culture, and all the accidents and contingencies to which a crop is subject, but also the skill of the planter, which no man of ordinary sagacity would attempt. I see no reason to interfere with his findings of fact. On the part of the defendants, the railroad company, it is contended that the plaintiffs can only claim damages for the years preceding the commencement of the suit, and that no damages can be awarded after that. The proposition is that the plaintiffs' action is "for a *private nuisance,* not a *public nuisance* nor a *trespass,* hence can only recover damages for the four years prior to the action brought." This position was maintained by Mr. Rion with his usual clearness and force, supported by reference to high authority. But, after reflection and careful consideration of the authorities, I confess I do not see the force of the position; it certainly is not the rule that has heretofore obtained in this State. Here is a case in possession of the Court, on the equity side. All the parties in interest are before it; the litigation has extended over twelve years; the evidence has been carefully taken and submitted. Why not decide it? Why send it back to be tried again, between the same parties, on the same evidence, and upon the iden-

tical questions of law and fact? It appears to me not only a use-less expense, but a violation of one of the cardinal rules of the Court of Equity: to prevent a multiplicity of suits. If the Court is satisfied that these plaintiffs have the right to recover, it would be hard, after twelve years waiting, to subject them to further delay. Nor do I think, from our new cases, that this is the rule in South Carolina. In our old actions of trespass to try title, in the law Court, the damages were always assessed up to the day of trial; and so, in suits where the lands of the riparian proprietor above were overflowed, by an obstruction erected by the proprietor below, the damages are assessed up to the rendition of the verdict. I cannot, for the life of me, see the difference between a *nuisance* and a *trespass*, where both are continuing,—why a different rule should prevail in assessing damages. It appears to me to be a mere technical dis-tinction, not founded in reason, and not calculated to advance the ends of justice. Nothing can be gained if this Court refuses to assess the damages beyond 1866, when this bill was filed. It will be forcing another suit on the same cause of action, between the same parties, and on the same evidence, the single result of which will be to extend the delay and increase the expense. It seems to me impossible for any such rule to be adopted by a Court having a just regard for the rights of suitors.

The plaintiffs except that the damages should have been measured by the annual amount of damage allowed by the Referee, together with the interest accruing thereon to the date of the report. I have already shown how difficult it would be to adopt a more satis-factory measure of damage than the one I have approved. The Referee examined the witnesses, inspected the land, saw the condi-tion of things as they have existed from the erection of the embank-ment to the day of his survey. After weighing all the facts and carefully and intelligently considering the same, he has come to a conclusion which is satisfactory to me. I will not disturb it.

It is ordered and adjudged that the exceptions of the plaintiffs and defendants be overruled and the report of the Referee, Mr. Rhett, be confirmed and made the judgment of the Court.

*Exceptions of Defendant to His Honor's Judgment:*

I. For that His Honor overruled the defendant's first exception to the report of the Referee herein, John T. Rhett, Esq., whereas he should have sustained said exception.

II. For that His Honor overruled the defendant's second exception to the report of the said Referee herein, whereas he should have sustained said exception.

III. For that His Honor overruled the defendant's third exception to the report of the said Referee herein, whereas he should have sustained said exception.

·IV. For that His Honor overruled the defendant's fourth exception to the report of the said Referee herein, whereas he should have sustained said exception.

V. For that His Honor overruled the defendant's fifth exception to the report of the said Referee herein, whereas he should have sustained said exception.

VI. For that His Honor overruled the defendant's sixth exception to the report of the said Referee herein, whereas he should have sustained said exception.

VII. For that His Honor overruled the defendant's seventh exception to the report of the said Referee herein, whereas he should have sustained said exception.

*Exception of Plaintiffs:*

For that His Honor erred in not sustaining the third exception of the plaintiffs to the report of John T. Rhett, Esq., the Referee herein, which exception was in words following, to wit: "Because the Referee should have allowed interest on the annual damage as estimated by him."

Both parties appealed.

*Fickling & Pope*, for plaintiffs.

*Rion*, contra.

February 20, 1879.　The opinion of the Court was delivered by

WILLARD, C. J.　The grounds of appeal are the refusal of the Circuit Judge to sustain the exceptions to the Referee's report on the amount of damages sustained by the plaintiff.　The bill alleges that the defendants, in the course of constructing their railroad over lands adjoining the plaintiff's land, had caused an obstruction to a natural water course, by which the water accumulating on plaintiff's land had been used to discharge itself, to plaintiff's damage.　When the lands of one proprietor are drained by a natural

·water course continuing over the land of an adjoining owner, the proprietary right of such adjoining owner is subject to a servitude to suffer such drainage to continue, whether the flow of water is continuous or intermittent.—*Master* vs. *Riddle,* 26 Penn., 415, note; *Earl* vs. *DeHast,* 1 Beasley, (N. J.,) 280. When by misuse of the servient premises, contrary to such servitude, damage is sustained by the dominant premises, in the nature of a private nuisance, the owner of the last named premises is entitled to a remedy in equity by injunction and order of abatement, and equity obtaining jurisdiction for that purpose will hold the bill for compensating damages sustained by the plaintiff, in order that full justice may be done and resort to a Court of law rendered unnecessary.—*Earl* vs. *DeHast,* 1 Beasley, 280; *Bird* vs. *Railroad,* 8 Rich. Eq., 46; *Hammond* vs. *Fuller,* 1 Paige Ch., 197; *Van Buren* vs. *Van Buren,* 2 Johns. Ch., 272. In the present case the facts entitling the plaintiff to a decree are clearly established, and it only remains to be considered whether the Referee has erred in his finding as to the amount of damage. The report of the Referee must be taken as true in point of fact, inasmuch as the testimony taken before him, if any was so taken, is not set out in the brief. Whatever conclusion of fact was reached by personal inspection on the part of the Referee must be regarded as conclusive in the absence of any objection to that mode of ascertaining the facts. Assuming the truth of the facts stated by the Referee, it is clear that the failure of the defendants to place the floor of their culvert at or below the bottom of the water course was sufficient ground for charging the defendants with all actual damage sustained by the plaintiff by reason of such improper construction.

The objection that the Referee did not allow to the defendants the benefit to which they were entitled from the fact that the injury sustained to plaintiff's premises was in part due to neglect on his part to keep the ditches on his land in good condition, is not well founded. The Referee appears to have allowed force to such fact in settling the amount of damage, distinguishing that due to the misconduct of defendants. As the amount of damage found was a gross sum, we cannot say, as appellant alleged, that the Referee arrived at that amount by ascertaining an estimated sum per acre and multiplying that sum by the whole number of acres, and, therefore, the objections stated to the application of that method is inapplicable to the case. There is nothing in the mode of computing

the damages stated in the report that would justify our setting it aside. We have no means of determining that the damages found by the Referee are excessive, and the concurrence of the Circuit Judge with the Referee leads to the opposite inference. It was proper for the Referee to find damages for the whole period during which the suit was undergoing prosecution. A bill of this kind is in the nature of *quia timet*. The direct ground of jurisdiction is future, not past damage, thus constituting a material difference between the legal and equitable remedies in such cases. The ascertainment of past damages is incidental merely. The future damage contemplated by the bill is that arising at any time after the filing of the bill. Thus damage done during the pendency of the suit is within the principle on which the jurisdiction rests, and this appears by the fact that the Court may guard against such intermediate damages by injunction in cases that admitted of that remedy. To affirm that the Court may not compensate for that which it has a right to prevent, is inconsistent. The fact that in the present case the only mode of arresting the damage is abatement, and cannot be accomplished by an injunction, does not affect the question of jurisdiction as it regards damages. The nature and consequences of the jurisdiction are the same, whether the case calls for an injunction or a decree of abatement. To turn the plaintiff out of Court to find compensation for damages, *pendente lite*, at law, would be contrary to all the principles of equity. Such Courts often assume jurisdiction to prevent a multiplicity of suits, but none decline a jurisdiction clearly their own for the sake of multiplying remedies.

Under this view, it is not necessary to inquire whether the Code, adopted since the commencement of this suit, has worked any changes in the scope of the issues. The foregoing disposes of all of defendants' grounds of appeal. The plaintiff demands that interest should have been to the amount of damage found. There is no ground on which this could be done. Interest is in the nature of damages for the detention of money and is never allowed in unliquidated damages.—*Ancrum* vs. *Stone*, 2 Spear., 498. Nor can damages found as matter of fact be regarded as liquidated from the time of such finding. When the damages are included in a judgment, they are merged in an obligation of record that is certain as to the amount and time of payment, and upon such an obligation interest runs.

The plaintiff's appeal must be dismissed. The appeal of the defendants must also be dismissed and the decree of the Circuit Court affirmed.

*McIver*, A. J., and *Haskell*, A. J., concurred.